IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAMES LINDON, | CASE NO. 1:18 CV 1788 |
| Plaintiff, | |
| v. | JUDGE DONALD C. NUGENT |
| CUYAHOGA COUNTY COMMON PLEAS COURT PROBATION DEPARTMENT, et al., | <u>MEMORANDUM OPINION</u> |
| Defendants. | |

This matter is before the Court on the Motions to Dismiss filed by Defendant, ORCA House (Docket #6) and Defendants, Cuyahoga County Common Pleas Court Probation Department and Probation Officer Maria Nemec (Docket #11).

I. **Factual Allegations and Procedural History.**

As alleged in the Complaint, the facts of this case are follows:

On or about June 16, 2016, Plaintiff, James Lindon, was convicted in the Cuyahoga County, Ohio Court of Common Pleas for aggravated theft; tampering with evidence; and, drug possession. (Complaint at Paragraph 12.) Mr. Lindon states that "[h]is conviction was based on five missing tablets of Hydrocodone, an opioid, from a pharmacy where Mr. Lindon previously worked as a pharmacist." (Id.) Mr. Lindon was sentenced to two years of probation and was required to complete an in-patient substance abuse program as a term of his probation. (Id. at Paragraph 13.) In its Journal Entry, dated August 9, 2016, the Cuyahoga County Court of

Common Pleas ordered as follows:

> The Court finds that a community control/probation sanction will adequately protect the public and will not demean the seriousness of the offense. It is therefore ordered that the Defendant is sentenced to 2 year(s) of community control/probation on each Count, under supervision of the Adult Probation Department with the following conditions: Defendant to abide by the rules and regulations of the Probation Department.
> Court orders Defendant to be supervised by: Regular Supervision Unit
> Arrest if/on: First positive or too dilute.
> Regular drug testing and counseling.
> In patient drug treatment.
> Violation of the terms and conditions may result in more restrictive sanctions as approved by law.
> Count 1 (F4) - 17 Months.
> Count 2 (F5) - 11 Months.
> Count 3 (F3) - 30 Months.

(Docket #11-2.)

The Cuyahoga County Probation Department and its Chief Probation Officer, Maria Nemec, required Mr. Lindon to complete in-patient substance abuse treatment at ORCA House, a non-profit, private entity that contracts with the Cuyahoga County Probation Department. (Complaint at Paragraph 32.) At ORCA House, Mr. Lindon alleges he was forced to attend Alcoholics Anonymous ("AA") – a twelve-step religious program – to satisfy the terms of his probation. (Id. at Paragraphs 15-27; 47.) "ORCA House imposes AA programming on its residents. Those subjected to in-patient treatment must attend Alcoholics Anonymous programming at least two times a week." The AA programming included staff-led religious prayers. (Id. at Paragraph 48.) Mr. Lindon describes himself as, "an avowed atheist and Humanist" who "has abstained from personal religious practice for over thirty years." (Id. at Paragraph 8.) Mr. Lindon states that he "was unable to physically remove himself" from the AA meetings and "felt compelled to participate in the recitation of prayers, as staff made it clear that residents who did not attend and participate in the program could be removed, which would

violate the terms of his probation and likely subject him to jail time." (Id. at Paragraph 55.) Mr. Lindon alleges that after attending the first AA meeting, he registered an objection with ORCA House staff based on his atheism, but that ORCA House still required him to attend AA. (Id. at Paragraph 52.) Mr. Lindon alleges he "was not offered a secular alternative to AA and that ORCA House staff informed him that the AA program could not be changed or substituted." (Id. at Paragraph 53.)

Mr. Lindon asserts that the "Probation Department knew or should have known that confining Mr. Lindon to an in-patient substance abuse treatment program that does not offer secular alternatives to AA" violated his religious rights and that the Probation Department placed him at ORCA House "without any consideration of his religious beliefs." (Id. at Paragraphs 34-35.) Mr. Lindon states that "[u]pon completion of his mandated in-patient treatment at ORCA House, Mr. Lindon asked the Probation Department if he could stop attending AA, as he had completed in-patient substance abuse treatment as mandated by the terms of his probation" but that "[t]he Probation Department informed him that if he stopped attending AA, the Probation Department would compel him to appear before a judge, thereby demonstrating that [he] would violate his probation by discontinuing attendance at AA. (Id. at Paragraphs 36-37.)

On August 2, 2018, Mr. Lindon filed his Complaint in this Court against the Cuyahoga County Probation Department, Probation Officer Nemec, and ORCA House, asserting claims under "42 U.S.C. § 1983 for declaratory and injunctive relief to redress the deprivation, under color of state law, of rights, privileges, and immunities secured . . . under the First Amendment to the United States Constitution." Mr. Lindon alleges that Defendants are State actors who violated the Establishment and Free Exercise Clauses of the United States and Ohio Constitutions by compelling and coercing him to attend AA as a term of his probation and by not

offering secular alternatives to AA. (Claims 1-4.) Mr. Lindon also included a claim under the Religious Land Use and Institutionalized Persons Act against ORCA House, alleging ORCA House is a State actor; constitutes an institution as defined under 42 U.S.C. § 1977(1); imposed a substantial burden on his religious exercise by requiring AA attendance; that "[i]mposing such a burden neither served a compelling government interest nor was it the least restrictive means of further [sic] a government interest"; and, even if a compelling interest could be shown, that "the imposition of AA was not the least restrictive means of furthering any valid interest." (Claim 5.) Mr. Lindon seeks a declaration from the Court that Defendants' policies and practices of endorsing and providing in-patient treatment programs that do not offer secular alternatives to AA violate the United States Constitution. (Complaint at pp. 15-16.)[1]

ORCA House filed a Motion to Dismiss the Complaint on August 31, 2018. (Docket #6.) The Cuyahoga County Probation Department and Probation Officer Nemec filed a Motion to Dismiss the Complaint on September 25, 2018. (Docket #11.) Mr. Lindon filed a Brief in Opposition on November 16, 2018. (Docket #23.) Reply Briefs were filed on November 30, 2018 (Docket #27) and December 26, 2018 (Docket #29).

## II. Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) allows a defendant to test the legal sufficiency of a complaint without being subject to discovery. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. Ohio 2003). In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favorable of the plaintiff. *See Directv, Inc.*

---

[1] Mr. Lindon indicated during the December 27, 2018 Status Conference that he no longer seeks injunctive relief.

-4-

v. *Treesh*, 487 F.3d 471, 476 (6th Cir. Ky. 2007). The court will not, however, accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. Tenn. 2000).

In order to survive a motion to dismiss, a complaint must provide the grounds of the entitlement to relief, which requires more than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted); *see Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545 548, at *2 (6th Cir. Ohio Sept. 25, 2007) (recognizing that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)"). Accordingly, the claims set forth in a complaint must be plausible, rather than conceivable. *See Twombly*, 127 S. Ct. at 1974.

On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. Ohio 2001). It is with this standard in mind that the instant Motion must be decided.

## III. Discussion.

42 U.S.C. § 1983. Section 1983 provides, in part, as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an

action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978)). Mr. Lindon alleges Defendants violated the Establishment and Free Exercise Clauses of the First Amendment, under both Federal and State law. The relevant provisions of the First Amendment provide that, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const., Amend. 1. With regard to his Establishment Clause claim, Mr. Lindon alleges that Defendants in this case coerced him to attend AA by conditioning the terms of his probation on attendance and giving him no secular alternatives. With regard to his Free Exercise claim, Mr. Lindon alleges that in predicating his probation on – and forcing his participation in – AA, Defendants substantially burdened his beliefs as an atheist, as he was forced to choose between his belief that there is no higher power and his freedom.

### A.    Defendants Cuyahoga County Probation Department and Probation Officer Nemec.

The Cuyahoga County Probation department is not *sui juris* – it is not a legal entity that can sue or be sued. *See Moore v. Cuyahoga Cty.*, Case No. 1:16 CV 3068, 2017 U.S. Dist. LEXIS 152070 (N.D. Ohio July 27, 2017), adopted by *Moore v. Cuyahoga Cty.*, 2017 U.S. Dist. LEXIS 152411 (N.D. Ohio Sept. 18, 2017.). See also *Cruz v. Cuyahoga Cty. Probation Dept.*, Case No. 1:17 CV 765, 2017 U.S. Dist. LEXIS 152411 (N.D. Ohio Aug. 8, 2017); *Pulse v. Gale*, Case No. 3:16 CV 91, 2016 U.S. Dist. LEXIS 56044 (N.D. Ohio April 27, 2016); *Jerry v. Lake*

*County/Board of Cty. Comm'rs*, Case No. 1:09 CV 2079, 2010 U.S. Dist. LEXIS 77135 (N.D. Ohio July 31, 2010). Accordingly, Mr. Lindon's claims against the Cuyahoga County Probation Department fail as a matter of law.

Furthermore, in order for Mr. Lindon to sufficiently allege his First Amendment rights were violated by the fact that he was required to participate in AA while at ORCA House, or while still on probation after his in-patient treatment had ended, he must allege that he clearly and adequately conveyed his religious-based concerns or objections to AA attendance. "For there to be a Constitutional violation, . . . the plaintiff must object to attending the program on religious grounds and be forced to attend over objection. Otherwise there is no coercion and consequently no constitutional violation." *Goodwin v. Hamilton*, Case No. 10 CV 11909, 2011 U.S. Dist. LEXIS 25790, *13 (E.D. Mich. 2011)(citing *Inouye v. Kemna*, 504 F.3d 705, 713 (9th Cir. 2007).

There is no allegation in the Complaint that Mr. Lindon made a religious-based objection or asked for a secular alternative to attending AA to the Court, the Probation Department, or to Probation Officer Nemec, at the time the terms of his probation were ordered or during his in-patient treatment at ORCA House. Mr. Lindon alleges, "Upon completion of his mandated in-patient treatment at ORCA House, [he] asked the Probation Department if he could stop attending AA" and that "the Probation Department informed [him] that if he stopped attending AA, [it] would compel him to appear before a judge." (Complaint at Paragraphs 36-37.) However, there is no allegation in the Complaint that Mr. Lindon made a religious-based objection to attending AA after his in-patient treatment, nor that he asked for and was denied a secular alternative to AA in order to satisfy the requirements of his probation. Even if Mr. Lindon had stopped going to AA and been compelled to appear before a judge, and/or voiced his

religious-based objection to AA, speculation that the Court or Probation Officer Nemec would not have provided or permitted a secular alternative, or that he would have been found to have violated the terms of his probation, is insufficient to sustain his First Amendment Claims.

For the foregoing reasons, Mr. Lindon's claims against the Cuyahoga County Probation Department and Probation Officer Nemec fail as a matter of law.

**B.     Defendant ORCA House.**

Even if ORCA House – a private, non-profit entity – receives public funding for the programs it offers to those on probation, it is not necessarily a State actor for purposes of 42 U.S.C. § 1983. *Bagwell v. Cmty. Programs, Inc.*, Case No. 11-10796, 2011 U.S. Dist. LEXIS 40690, *3-4 (E.D. Mich. April 13, 2011)(citing *Mele v. Hill Health Center*, 609 F. Supp. 2d 248, 257-58 (D. Conn. 2009); *accord Smith v. Devline*, 239 F. App'x 735 (3d Cir. 2007); *Moore v. Broady*, Case No. 10 CV 3250, 2010 U.S. Dist. LEXIS 79559, *5 (E.D. N.Y. Aug. 6, 2010). Under the public function test, a plaintiff must establish that defendant performs a function "traditionally the exclusive prerogative of the State." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 353 (1974). "Private businesses which provide services to [those on probation] are not state actors because such functions/services are not traditionally the exclusive prerogative of the State, and such businesses lack the authority to return the person to prison." *Estate of Schwartz v. Assisted Recovery Ctrs. of Am.*, LLC, Case No. 4:16 CV 673, 2017 U.S. Dist. LEXIS 30234 (E.D. Mo. March 3, 2017)(citing *Graves v. Narcotics Serv. Counsel, Inc.*, 605 F. Supp. 1285, 1287 (E.D. Mo. 1985); *Smith v. Devline*, 239 Fed. Appx. 735, *1 (3d Cir. July 11, 2007)(the duty to report a violation does not equate to the authority to return a program violator to prison); *Byng v. Delta Recovery Servs, LLC*, Case No. 6:13 CV 733, 2013 U.S. Dist. LEXIS 105606, *1 (N.D.N.Y. July 29, 2013). *See also Gebreneguesse v. Heyns*, Case No. 16-12804, 2017 U.S.

Dist. LEXIS 125607 (E.D. Mich. Aug. 9, 2017); *Morton v. Salvation Army*, Case No. 05 Civ. 2620, 2015 U.S. Dist. LEXIS 20019 (S.D. N.Y. Sept. 12, 2005).

Mr. Lindon does not allege any facts which establish ORCA House is a state actor. Accordingly, all of Mr. Lindon's claims against ORCA House fail as a matter of law.

**IV.    Conclusion**

For the foregoing reasons, the Motions to Dismiss filed by Defendant, ORCA House (Docket #6) and Defendants, Cuyahoga County Common Pleas Court Probation Department and Probation Officer Maria Nemec (Docket #11) are hereby GRANTED.

This case is hereby TERMINATED.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
Senior United States District Judge

DATED: February 8, 2019